**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|  |  |  |
|---|---|---|
| WESTPORT INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: |
| | ) | |
| JONATHAN P. COHEN, PA , | ) | |
| JONATHAN COHEN, ALLIED WORLD | ) | |
| INSURANCE COMPANY, ALLIED | ) | |
| WORLD SPECIALTY INSURANCE | ) | |
| COMPANY, ALLIED WORLD | ) | |
| NATIONAL ASSURANCE COMPANY, | ) | |
| and UNITED STATES FIRE | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT AND RESCISSION**

Plaintiff, Westport Insurance Company ("Westport") by and through its attorneys, and for its Complaint for rescission and declaratory judgment against Defendants, Jonathan P. Cohen, PA ("Cohen PA"), Jonathan Cohen ("Mr. Cohen"), Allied World Insurance Company, Allied World Specialty Insurance Company, Allied World National Assurance Company, and United States Fire Insurance Company, (collectively "AWAC"), states as follows:

**NATURE OF ACTION**

1.      This is an insurance coverage action seeking declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.  Plaintiff Westport seeks a declaratory judgment that Westport Policy No. WLA308011691503 (attached as **Exhibit A**) provides no coverage for the lawsuit filed against Cohen PA and Mr. Cohen by their former client, AWAC, styled *Allied World Insurance*

*Company, et. al. v. Jonathan P. Cohen, P.A., et al.*. Case No. 21-4010, pending in the United States District Court for the Eastern District of Pennsylvania (the "Underlying Lawsuit").

2.     Plaintiff Westport also seeks rescission of Westport Policy No. WLA3080116915031, and a declaration that the policy is deemed void ab initio.

3.     As a result of the dispute between Westport, Cohen PA and Mr. Cohen regarding the applicability of Westport Policy No. WLA3080116915031 to the Underlying Lawsuit, there is an actual case or controversy between the parties.

## PARTIES

4.     Plaintiff Westport is an insurance corporation that is organized and exists pursuant to the laws of Missouri, with its principal place of business in Kansas City, Missouri.

5.     Defendant Cohen PA is a Florida corporation licensed by the State of Florida and engaged in the business of providing legal services with its principal place of business located in Fort Lauderdale, Florida.

6.     Defendant Mr. Cohen is a citizen and resident of the state of Florida.

7.     Defendant Allied World Insurance Company is a New Hampshire corporation with its principal place of business in New York, New York.

8.     Defendant Allied World Specialty Insurance Company is a Delaware corporation with its principal place of business in New York, New York.

9.     Defendant Allied World National Assurance Company is a New Hampshire corporation with its principal place of business in New York, New York.

10.     Defendant United States Fire Insurance Company is a Delaware corporation with its principal place of business in Morristown, New Jersey. All AWAC Defendant entities are members of the same corporate family and are ultimate subsidiaries of Fairfax Financial

Holdings Limited. The AWAC entities are named as defendants in this suit as they may attempt to claim an interest in the proceeds of the Policy at issue if the court determines that the Policy at issue is not rescinded and coverage is available for Mr. Cohen and/or Cohen PA.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of the state of Missouri and citizens of the state of Florida and other states.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Cohen PA's principal place of business is in Fort Lauderdale and on information and belief Mr. Cohen resides within the Southern District of Florida and because a substantial part of the events giving rise to this cause of action occurred in this district.

## FACTUAL BACKGROUND

### Underlying Lawsuit

13.     AWAC filed a lawsuit against Cohen PA, Mr. Cohen and several other individuals on September 8, 2021, and filed a First Amended Complaint on November 2, 2021 (the "Underlying Lawsuit"). The operative complaint filed in the Underlying Lawsuit is attached as **Exhibit B**.

14.     The Underlying Lawsuit alleges, in pertinent part, the following:

       a.     In November 2013, James Keating ("J. Keating") formed a company called SR5, LLC ("SR5") (which had no offices, no online presence, no operating agreement or by laws, and the sole employees were J. Keating's minor children which were paid salaries). *See* Ex. B at 13-14 of 70.

b.      One month after J. Keating created SR5, he applied to work at AWAC. Ex. B at 13 of 70. AWAC hired J. Keating in February 2014 "to handle claims made on Allied World's surety bonds." *Id.* at 10 of 70. Despite AWAC company policies, J. Keating did not disclose to AWAC the existence of SR5 and J. Keating's ownership interest in SR5. *See id.* at 14 of 70.

c.      In January 2015, J. Keating retained Mr. Cohen and his law firm, Cohen PA, to represent AWAC "in connection with numerous surety and performance bond claims on bonds issued to Progressive Plumbing, Inc." Ex. B at 15 of 70. Mr. Cohen and Cohen PA agreed to adhere to the AWAC litigation management guidelines, which required Cohen PA and Mr. Cohen to disclose any actual or potential conflicts of interest to AWAC prior to beginning a matter or as soon as the conflict or potential conflict becomes known. *Id.*

d.      Beginning on May 17, 2015, shortly after Cohen PA and Mr. Cohen were retained to represent AWAC, Mr. Cohen signed a check from Cohen PA for $745.50 made out to SR5 for "consulting re Progressive." Ex. B at 16 of 70. AWAC claims that Cohen PA/ Mr. Cohen paid J. Keating (through SR5) a consulting fee on the same claim where J. Keating, as AWAC's claim handler, had retained Mr. Cohen and Cohen PA to represent AWAC, and never disclosed to AWAC the "clear conflict of interest created by this kickback payment." *Id.* For more than five years, Mr. Cohen continued to mail and wire kickback payments to J. Keating

(through SR5) from the Cohen PA account. *Id*. These payments "were nothing more than kickbacks" that Mr. Cohen paid to J. Keating through SR5 "in exchange for work Keating continued to assign on behalf of [AWAC]." *Id*. at 17-18 of 70.

e.     Beginning in November 2016, J. Keating, Mr. Cohen, and Cohen PA "creat[ed] a new joint venture, Kodiak Asset Recovery, LLC [("Kodiak")], to act as another vessel for fraud." Ex. B at 21 of 70. "Kodiak is in fact a joint-venture owned 50/50 by Keating (through SR5) and Cohen. Cohen's interest in the company is confirmed by its Certification of Formation which Cohen signed." *Id*. at 24 of 70.

f.     J. Keating retained Kodiak to perform asset searches for claims he was handling for AWAC, but Kodiak charged higher (at least double the) rates than those the company AWAC normally retained for that purpose. Ex. B at 23-24 of 70.

g.     "Kodiak operated out of Cohen, P.A.'s offices, and a Cohen, P.A. paralegal did much of Kodiak's work." Ex. B at 27 of 70.

h.     J. Keating and Mr. Cohen never disclosed to AWAC that they were co-owners of Kodiak. Ex. B at 24 of 70.

i.     J. Keating created another allegedly phony company, American Construction & Industrial, LLC, beginning in late 2017 or early 2018, which billed AWAC for ostensibly sham work on numerous surety claims. Ex. B at 29 of 70.

j. Mr. Cohen and Cohen PA were allegedly "aware that Keating used SR5 and the SR5 Enterprise to defraud [AWAC] in other ways than the kickback and Kodiak schemes." Ex. B at 31 of 70. Had Mr. Cohen and Cohen PA "previously disclosed to [AWAC] any of the information regarding their illicit kickback-for-representation scheme with Keating, or Keating's involvement and beneficial interest in Kodiak" [AWAC] "would have terminated Keating long before he had the opportunity to further defraud [AWAC]." *Id*.

15. The Underlying Lawsuit brings the following counts against Cohen PA and Mr. Cohen: (1) Civil RICO, 18 U.S.C. §1962(c), (d); (2) Fraud; (3) Breach of Fiduciary Duty; (4) Aiding and Abetting Breach of Fiduciary Duty; (5) Negligent Misrepresentation; and (6) Unjust Enrichment. *See* Ex. B at 36-68 of 70.

<u>**Cohen-Owned Entities**</u>

16. Based on public records of the Delaware Secretary of State, Kodiak was formed at the end of 2016. The Kodiak Secretary of State document is attached as **Exhibit F**.

17. The Kodiak Certificate of Formation of Limited Liability Company is signed and executed by Mr. Cohen as the "Authorized Person." This Certificate of Formation is attached as **Exhibit G**.

18. The Acknowledgment Copy of the Annual Franchise Tax paid by Kodiak for the years 2016 and 2020 state that the tax was paid via a credit card issued to Mr. Cohen. The Acknowledgment Copy is attached as **Exhibit H**.

19. The State of Delaware "Certificate of Cancellation" for Kodiak was signed by Mr. Cohen on March 16, 2021. The Certificate of Cancellation is attached as **Exhibit I**.

20.     The IRS Form SS-4 Employer Identification Number notice for Kodiak dated January 30, 2017, is addressed to Kodiak "c/o Largo Consulting LLC MBR." This notice is attached as **Exhibit J.** The address on this form is the same as the business address for Cohen PA. *See* Ex. J; *see also* Ex. A.

21.     Largo Consulting LLC ("Largo") is listed on the Delaware Secretary of State with an incorporation date of December 14, 2016, and a registered agent, which is the same registered agent as for Kodiak – "Resident Agents Inc." in Dover, Delaware. The Largo Secretary of State document is attached as **Exhibit K**; *see also* Ex. F.

22.     Mr. Cohen advised Katherine Mulroy, the Westport claims handler, on August 5, 2021, that Largo is "one of his companies" and that Largo created Kodiak.

23.     The letter to the Delaware Division of Corporations dated December 14, 2016, sent on behalf of Largo regarding the Formation of Largo was signed by Jonathan P. Cohen.

24.     The Largo Certificate of Formation of Limited Liability Company is signed and executed by Mr. Cohen as the "Authorized Person."

25.     The Limited Liability Company Agreement of Largo, effective as of December 14, 2016 ("Largo Agreement"), states it was "entered into by Jonathan P. Cohen (the 'member' or 'Member-Manager')".

26.     The Largo Agreement states that the principal office of Largo is 500 E. Broward Boulevard, Suite 1710, Fort Lauderdale, Florida, which is the same address as the Cohen law firm.

27.     The Largo Agreement states that Jonathan P. Cohen owns 100% of the membership interests in Largo.

28.     The Largo Agreement states that the overall management and control of the business and affairs of Largo shall be vested in Jonathan Cohen.

29.     The Federal tax documents for Kodiak for the years 2017, 2018, 2019, and 2020 each state that Kodiak is owned 50% by Largo and 50% by SR5.

34.     The tax returns for Kodiak for the year ended 2018, 2019 and 2020 are drafted to be signed by Jonathan Cohen as the "Managing Member."

**Background of Policy Applications**

30.     In 2018, Mr. Cohen, on behalf of Cohen PA, submitted an application to Westport for a lawyers professional liability policy, and then sought renewal of the said policy annually thereafter up through 2021. Each year, Mr. Cohen, on behalf of Cohen PA, submitted a renewal application to Westport.

31.     Mr. Cohen completed a 2018 policy application on a Medmarc/ Proassurance form application, which was signed and dated by Mr. Cohen on March 18, 2018. This application is attached as **Exhibit C**.

32.     The 2018 Medmarc/ Proassurance form application asked the following:

3. Applicant Information

***

O. In the past five years, did any lawyer proposed for this insurance:

i.  act as a director, officer, partner or trustee for, or exercise any form of managerial or fiduciary control over, any business enterprise of a client other than the applicant?

ii. own, manage, have financial control over, or equity interest in, any business enterprise other than the applicant or its predecessor firms?

If yes to any of the above, please complete the Outside Interests Supplement.

33.     Mr. Cohen marked "No" to each of these questions. *See* Ex. C. Mr. Cohen signed a "Coverage Order Request Form & Warranty Statement" dated April 13, 2018, which warranted that the information provided on the 2018 Medmarc application remained correct. This Warranty Statement is attached as **Exhibit D**.

34.     Mr. Cohen also completed renewal applications in 2019, 2020 and 2021 for policies issued by Westport in each of those years, including the policy at issue herein, which asked:

> 10. In the past 12 months, has your firm or any individual proposed for this insurance engaged in new business activities or changed interest in business ventures other than the private practice of law?

Mr. Cohen marked "No" to this question on each renewal application. These renewal applications are attached as **Exhibit E**.

35.     Mr. Cohen marked "No" to these questions in the renewal applications in 2019, 2020 and 2021 for policies issued by Westport in each of those years, including the policy at issue herein, despite his ownership interests in Largo and Kodiak.

36.     Managing general agent Mary Katherine Rodriguez Davila, of Professional Risk Specialty Group in Florida, had the authority to make the underwriting decisions regarding each of the annual policies issued by Westport to Cohen PA (which included Mr. Cohen as an insured) beginning from 2018 through and including the 2021 Policy at issue. *See* Declaration of Mary Katherine Rodriguez Davila attached as **Exhibit L**.

37.     Ms. Rodriguez, as the agent for Westport underwriting the annual policies to Cohen PA and Mr. Cohen from 2018 through and including the 2021 Policy at issue, stated that based on Mr. Cohen's ownership interests and managerial or fiduciary control over Kodiak and Largo, he was required to disclose the Kodiak and Largo entities as outside interests in response to the application questions regarding outside interests. *See* Ex. L. Had Mr. Cohen marked "Yes" and disclosed that he had an outside interest in another entity other than Cohen PA, he would have been directed to complete an Outside Interest Supplement. *See id*.

38.     The Outside Interest Supplement requests information about the other disclosed entity/entities to determine the relationship between the entity/entities and Cohen PA and its lawyers and how Cohen PA is protecting itself with respect to the other entity/entities. *See* Ex. L.

Had Mr. Cohen completed the Outside Interest Supplement, the Westport underwriter would have requested additional information from Mr. Cohen about the ownership of the entities, work performed by the entities, shared clients, conflicts of interest waivers and other matters pertinent to underwriting. *See id*.

39.     Upon analyzing the Outside Interest Supplement, the underwriter determines if any of the insureds indicate that they have ten (10) percent or more interest in another entity or have managerial or fiduciary control over another entity. *See* Ex. L. Should any of the insureds mark that they have ten percent or more interest in another entity or have managerial or fiduciary control over another entity, based upon the underwriting guidelines for the Lawyers Program and consistent with the practice of issuing policies with Specified Business Exclusions based upon similar facts, the underwriter assesses whether to include a Specified Business Exclusion. *See id*.

40.     The underwriter advised that had Mr. Cohen of Cohen PA been truthful in his answers on the policy applications, the underwriter on behalf of Westport either would have considered not issuing the policies beginning from 2018 through and including the 2021 Policy at issue or not issued the said policies on the same, terms, conditions, exclusions, and/or limits. For instance, if Mr. Cohen of Cohen PA disclosed the facts about the entities, including that he owned one hundred (100) percent of Largo and he and/or Largo owned at least fifty (50) percent of Kodiak, that would have caused the underwriter to "absolutely" add Specified Business Exclusions as to Kodiak and Largo on the Westport policies issued to Cohen beginning in 2018, including the 2021 Policy at issue.  *See* Ex. L. The underwriter would also have considered issuing the policies with lower limits. *See id*.

**The Westport Policy**

41.     Westport issued Lawyers Professional Liability Policy No. WLA308011691503

to Cohen PA, under which Mr. Cohen is an insured, for the policy period April 15, 2021 to April

15, 2022 (the "Policy"). Ex. A

42.     The insuring agreements state in part as follows:

> I. INSURING AGREEMENTS
> A. The Company shall pay on behalf of any INSURED all LOSS in excess of the
> deductible which any INSURED becomes legally obligated to pay as a result of
> CLAIMS first made against any INSURED during the POLICY PERIOD and
> reported to the Company in writing during the POLICY PERIOD or within sixty
> (60) days thereafter, by reason of any alleged WRONGFUL ACT occurring on or
> after the RETROACTIVE DATE, if any.

*See* Ex. A.

43.     Section III.  DEFINITIONS of the Policy includes the following:

> **J. "LOSS" MEANS** the monetary and compensatory portion of any judgment,
> award or settlement, provided always that any settlement is negotiated by the
> Company or with the Company's approval and that LOSS shall not include:
>
> 1. civil or criminal fines, penalties, fees or sanctions levied against an INSURED;
>
> 2. matters deemed uninsurable by operation of law;
>
> 3. punitive or exemplary damages;
>
> 4. the multiplied portion of any multiple damages;
>
> 5. the return by any INSURED of any fees or remuneration paid to any
>    INSURED;
>
> 6. any form of non-monetary relief or costs or fees incident thereto; or
>
> 7. any amount for which any INSURED is absolved from payment by reason of
>    any covenant, agreement or court order or for any amount for which there is no
>    legal recourse against an INSURED.
>
> **S. "PROFESSIONAL SERVICES" MEANS** services rendered to others in the
> INSURED'S capacity as a lawyer, either for a fee or eleemosynary. The following
> services rendered by an INSURED lawyer will also be deemed to constitute
> PROFESSIONAL SERVICES:
>
> 1. as an arbitrator, mediator, or other fact finding neutral;

-11-

2. as a member, director or officer of any bar association, its governing board or any of its committees;

3. as a member of a formal accreditation, ethics, peer review, licensing board, standards review or similar professional board or committee relating to the practice of law;

4. as an Author, Publisher, or Presenter of legal research papers or legal materials, but only where direct compensation per publication or presentation is $25,000.00 or less;

5. as a lobbyist, which for purposes of this definition means any licensed attorney who for compensation, acts on behalf of another person or entity, to communicate directly or indirectly with any public official, public servant, or candidate for public office for the express purpose of influencing or attempt to influence an executive, legislative or administrative action or inaction; as an expert witness, if the INSURED was retained to offer expert opinion on issues related to the law, legal practice or procedures of the legal profession; or

6. as an administrator, conservator, executor, guardian, trustee, escrow agent, receiver or court appointed fiduciary.

When an INSURED, either a lawyer or a non-lawyer, acts as a notary public or title agent, the INSURED'S acts in such capacity shall be deemed to be the rendition of PROFESSIONAL SERVICES.

**W. "WRONGFUL ACT" MEANS** any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of PROFESSIONAL SERVICES for others. "WRONGFUL ACT" does not mean or include a PRIVACY EVENT OR SECURITY FAILURE arising out of the rendering of PROFESSIONAL SERVICES.

*See* Ex. A.

44.   Section IV.  **EXCLUSIONS** of the Policy includes the following:

This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:

**B.** any WRONGFUL ACT occurring prior to the effective date of the first lawyers professional liability policy issued by the Company to the NAMED INSURED where there has been continuous and uninterrupted coverage with the Company if, (a) the WRONGFUL ACT had previously been reported to any other insurance company or (b) if the INSURED at the effective date of the first lawyers professional liability policy issued by the Company to the NAMED INSURED knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM; provided, however that subparagraph (b) does not apply to any INSURED who had no knowledge of or could not have reasonably foreseen that any such WRONGFUL ACT might be the basis of a CLAIM.

\*\*\*

**H.** any criminal, dishonest, malicious, fraudulent or intentionally wrongful or harmful:

1. act, error, omission; or

2. PERSONAL INJURY committed or ratified by an INSURED.

This exclusion applies to any INSURED who is adjudged or admits to have committed such acts. This exclusion does not apply to any INSURED who did not commit, know or acquiesce in such WRONGFUL ACT which is the basis of the CLAIM. The INSURED shall reimburse the Company for CLAIMS EXPENSES and LOSS paid if the commission of such acts are admitted or adjudged. Criminal proceedings are not covered under this POLICY regardless of the allegations made against any INSURED. Terms provided in this Exclusion H do not apply to the specific acts as set forth in Exclusions J or O.

**I.** any INSURED'S activities as an officer, director, partner, manager or employee of any company, corporation, operation, organization, partnership or association other than the NAMED INSURED or PRIOR FIRM, unless indicated as an additional INSURED or unless the activities are deemed to be the rendition of PROFESSIONAL SERVICES in the INSURED's capacity as a lawyer.

**J.** any conversion, misappropriation or improper commingling of client, trust or other funds or property regardless of the cause of action or legal theory asserted in regard to such conversion, misappropriation or improper commingling.

\*\*\*

**N.** any INSURED having gained any personal profit or advantage to which he or she was not legally entitled.

**O.** the disbursement of funds:

1. as the result of the deposit of a COUNTERFEIT check;

2. without written verification from the issuing bank that the funds are valid and available;

3. as the result of a fraudulent scheme; or

4. from the failure to safeguard any funds or for any funds not reaching the proper party or the intended recipient, for any reason.

*See* Ex. A.

### WESTPORT TENDER OF PREMIUM

45.     As a condition precedent to filing this action for Rescission, Westport tendered

the premium paid by Cohen PA and Mr. Cohen for the Policy at issue via certified mail and e-

mail on December 13, 2021. The said e-mail and letter tendering the return of premium are attached as **Exhibit M**.

**COUNT I**
**RESCISSION**
**(The Policy is Rescinded and is Void Ab Initio)**

46.     Plaintiff Westport repeats and incorporates the allegations contained in Paragraphs 1 through 45 of the Complaint as though fully set forth herein.

47.     Mr. Cohen of Cohen PA and J. Keating created Kodiak at the end of 2016, whereby Kodiak is a joint venture, owned fifty percent by Largo which is solely owned by Mr. Cohen.

48.     Jonathan Cohen was and/or acted as the "Managing Member" of Kodiak for the years 2018, 2019 and 2020.

49.     Kodiak operated out of the offices of Cohen PA, and Cohen PA paralegals performed work for Kodiak.

50.     Mr. Cohen was the sole owner of Largo which he created in 2016.

51.     Largo's principal office was the office of Cohen PA.

52.     Mr. Cohen filled out a policy application in 2018 and renewal applications in 2019, 2020, and 2021 which asked Mr. Cohen whether any lawyer of Cohen PA proposed for insurance coverage under the Westport policies owned, managed, had financial control over or equity interest in any business enterprise other than Cohen PA. Mr. Cohen stated "No" and failed to disclose his interests in Kodiak and Largo.

53.     Mr. Cohen made material misrepresentations on his 2018, 2019, 2020, and 2021 policy applications when he answered "No" to the questions on the policy applications which asked Mr. Cohen whether any lawyer of Cohen PA proposed for insurance coverage under the

Westport policies owned, managed, had financial control over or equity interest in any business enterprise other than Cohen PA.

54.    Westport relied on the information provided by Mr. Cohen in the policy applications in issuing the Policy.

55.    Had Mr. Cohen truthfully answered the questions on the policy applications which asked Mr. Cohen whether any lawyer of Cohen PA proposed for insurance coverage under the Westport policies owned, managed, had financial control over or equity interest in any business enterprise other than Cohen PA by disclosing his interests in Kodiak and Largo, Westport would have either not have issued the policies or it would have issued the policies with different policy terms, exclusions, and/or limits.

56.    Accordingly, as Mr. Cohen made material misrepresentations on his policy applications, the Policy at issue is to be rescinded and deemed void ab initio such that it does not provide coverage to the Underlying Lawsuit.

## COUNT II
## DECLARATORY JUDGMENT
## (There is No Coverage for Actions Which Do Not Constitute Professional Services)

57.    Plaintiff Westport repeats and incorporates the allegations contained in Paragraphs 1 through 45 of the Complaint as though fully set forth herein.

58.    The Policy provides coverage for Claims "by reason of any alleged WRONGFUL ACT."

59.    The Policy defines WRONGFUL ACT as "any act, error, omission, circumstance, PERSONAL INJURY or breach of duty in the rendition of PROFESSIONAL SERVICES for others."

60.     The Policy defines PROFESSIONAL SERVICES as "services rendered to others

in the INSURED'S *capacity as a lawyer*, either for a fee or eleemosynary. The following services

rendered by an INSURED lawyer will also be deemed to constitute PROFESSIONAL

SERVICES:

> 1. as an arbitrator, mediator, or other fact finding neutral;
>
> 2. as a member, director or officer of any bar association, its governing board or any of its committees;
>
> 3. as a member of a formal accreditation, ethics, peer review, licensing board, standards review or similar professional board or committee relating to the practice of law;
>
> 4. as an Author, Publisher, or Presenter of legal research papers or legal materials, but only where direct compensation per publication or presentation is $25,000.00 or less;
>
> 5. as a lobbyist, which for purposes of this definition means any licensed attorney who for compensation, acts on behalf of another person or entity, to communicate directly or indirectly with any public official, public servant, or candidate for public office for the express purpose of influencing or attempt to influence an executive, legislative or administrative action or inaction; as an expert witness, if the INSURED was retained to offer expert opinion on issues related to the law, legal practice or procedures of the legal profession; or
>
> 6. as an administrator, conservator, executor, guardian, trustee, escrow agent, receiver or court appointed fiduciary.
>
> When an INSURED, either a lawyer or a non-lawyer, acts as a notary public or title agent, the INSURED'S acts in such capacity shall be deemed to be the rendition of PROFESSIONAL SERVICES.

(emphasis added).

61.     The Underlying Lawsuit contains allegations of conduct against Cohen PA and Mr.

Cohen of activities that were not undertaken in the rendition of Professional Services, as defined

by the Policy.

62.     The Underlying Lawsuit alleges that Cohen PA and Mr. Cohen engaged in a

fraudulent scheme, via overbilling and making kickbacks. This conduct in addition to asset

searches performed as work for Kodiak do not constitute Professional Services, and thus such conduct is not covered.

## COUNT III
## DECLARATORY JUDGMENT
### (Exclusion B, Prior Knowledge, Precludes Coverage for The Underlying Lawsuit)

63.     Plaintiff Westport repeats and incorporates the allegations contained in Paragraphs 1 through 45 of the Complaint as though fully set forth herein.

64.     Exclusion B. of the Policy precludes coverage for any Claim "based upon, arising out of, attributable to, or directly or indirectly resulting from B. any WRONGFUL ACT prior to the effective date of the first lawyers professional liability policy issued by the Company to the NAMED INSURED where there has been continuous and uninterrupted coverage with the Company if… (b) the INSURED at the effective date of the first lawyers professional liability policy issued by the Company to the NAMED INSURED knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM."

65.     Westport issued its first lawyers professional liability policy to Cohen PA in April 2018, which was thereafter continuously renewed annually.

66.     The Underlying Lawsuit asserts that upon J. Keating's recommendation, AWAC hired Cohen PA and Mr. Cohen as their counsel in January 2015, and Mr. Cohen of Cohen PA allegedly began making kickback payments to J. Keating, in exchange for the work Keating assigned to Mr. Cohen and Cohen PA on behalf of AWAC, in May 2015, (prior to the inception of the first policy in April 2018) for a period of five years. The value of these payments "should have inured to [AWAC] in the form of reductions in" Cohen PA's and Mr. Cohen's fees. Ex. B at 18 of 70.

67.     The allegations of the Underlying Lawsuit and the facts and circumstances that gave rise to the AWAC claims against Mr. Cohen and Cohen PA establish that Exclusion B applies to bar coverage for the Underlying Lawsuit.

**COUNT IV**
**DECLARATORY JUDGMENT**
**(Exclusion H., Intentional Acts/ Fraud Exclusion, Precludes**
**Coverage for the Underlying Lawsuit)**

68.     Plaintiff Westport repeats and incorporates the allegations contained in Paragraphs 1 through 45 of the Complaint as though fully set forth herein.

69.     Exclusion H of the Policy precludes coverage for any Claim "based upon, arising out of, attributable to, or directly or indirectly resulting from: H. any criminal, dishonest, malicious, fraudulent or intentionally wrongful or harmful: 1. act, error, omission" whereby the "exclusion applies to any INSURED who is adjudged or admits to have committed such acts."

70.     The conduct at issue in the Underlying Lawsuit constitutes fraud and intentional conduct and contains a count of Fraud against Cohen PA and Mr. Cohen. As such, Exclusion H precludes coverage for the Underlying Lawsuit.

**COUNT V**
**DECLARATORY JUDGMENT**
**(Exclusion I., Activities as an Employee of Another Company Exclusion, Precludes**
**Coverage for the Underlying Lawsuit)**

71.     Plaintiff Westport repeats and incorporates the allegations contained in Paragraphs 1 through 45 of the Complaint as though fully set forth herein.

72.     Exclusion I of the Policy precludes coverage for any Claim "based upon, arising out of, attributable to, or directly or indirectly resulting from: I. any INSURED'S activities as an officer, director, partner, manager or employee of any company, corporation, operation, organization, partnership or association other than the NAMED INSURED or PRIOR FIRM,

unless indicated as an additional INSURED or unless the activities are deemed to be the rendition of PROFESSIONAL SERVICES in the INSURED's capacity as a lawyer."

73.     The Underlying Lawsuit asserts that certain of the activities and conduct at issue were undertaken by Mr. Cohen in his capacity as an owner of Kodiak and/or Largo and not in Mr. Cohen's capacity as a lawyer. Thus, Exclusion I precludes coverage for the Underlying Lawsuit.

**COUNT VI**
**DECLARATORY JUDGMENT**
**(Exclusion J., Misappropriation Exclusion, Precludes**
**Coverage for the Underlying Lawsuit)**

74.     Plaintiff Westport repeats and incorporates the allegations contained in Paragraphs 1 through 45 of the Complaint as though fully set forth herein.

75.     Exclusion J of the Policy precludes coverage for any Claim "based upon, arising out of, attributable to, or directly or indirectly resulting from: J. any conversion, misappropriation or improper commingling of client, trust or other funds or property regardless of the cause of action or legal theory asserted in regard to such conversion, misappropriation or improper commingling."

76.     The Underlying Lawsuit asserts that Mr. Cohen and Cohen PA overcharged AWAC for their legal services, in order to send kickbacks to J. Keating, and thus misappropriated their client's, AWAC's, funds.

77.     Exclusion J precludes coverage for the Underlying Lawsuit because the Underlying Lawsuit asserts that Cohen PA and Mr. Cohen misappropriated AWAC's funds.

**COUNT VII**
**DECLARATORY JUDGMENT**
**(Exclusion N., Personal Profit Exclusion, Precludes Coverage for the Underlying Lawsuit)**

78.     Plaintiff Westport repeats and incorporates the allegations contained in Paragraphs 1 through 45 of the Complaint as though fully set forth herein.

79.     Exclusion N of the Policy precludes coverage for any Claim "based upon, arising out of, attributable to, or directly or indirectly resulting from: N. any INSURED having gained any personal profit or advantage to which he or she was not legally entitled."

80.     The Underlying Lawsuit asserts that Mr. Cohen and Cohen PA overbilled their AWAC client for their personal profit and advantage, and as such Exclusion N. precludes coverage for the Underlying Lawsuit.

## COUNT VIII
## DECLARATORY JUDGMENT
### (Exclusion O., Disbursement of Funds Exclusion, Precludes Coverage for the Underlying Lawsuit)

81.     Plaintiff Westport repeats and incorporates the allegations contained in Paragraphs 1 through 45 of the Complaint as though fully set forth herein.

82.     Exclusion O of the Policy precludes coverage for any Claim "based upon, arising out of, attributable to, or directly or indirectly resulting from: the disbursement of funds: 1. as the result of the deposit of a COUNTERFEIT check; 2. without written verification from the issuing bank that the funds are valid and available; 3. as the result of a fraudulent scheme; or 4. from the failure to safeguard any funds or for any funds not reaching the proper party or the intended recipient, for any reason."

83.     The Underlying Lawsuit asserts that Cohen PA and Mr. Cohen engaged in a fraudulent scheme with J. Keating to overcharge AWAC for both Mr. Cohen's and Cohen PA's legal services and the services rendered by Kodiak, and thus Exclusion O precludes coverage for the Underlying Lawsuit.

### COUNT IX
### DECLARATORY JUDGMENT
### (Punitive Damages and Return of Fees Do Not Constitute Covered Loss Under the Policy)

84.     Plaintiff Westport repeats and incorporates the allegations contained in Paragraphs 1 through 45 of the Complaint as though fully set forth herein.

85.     The Policy definition of Loss does not include punitive damages or the return of fees paid to Cohen PA and Mr. Cohen.

86.     The Underlying Lawsuit seeks punitive damages and disgorgement of fees. Such damages do not constitute Loss and are thus not covered.

### PRAYER FOR RELIEF

WHEREFORE, Westport Insurance Company demands judgment be entered against Defendants Jonathan P. Cohen PA and Jonathan Cohen as follows:

a)   determining and declaring that the policy applications referenced herein contain material misrepresentations;

b)   declare that Westport Policy No. WLA308011691503 is rescinded and void ab initio;

c)   declare that Westport Policy No. WLA308011691503 is inapplicable to the Underlying Lawsuit;

d)   Should Westport Policy No. WLA308011691503 not be deemed rescinded, a declaration that Westport Policy No. WLA308011691503 does not provide coverage for conduct which does not consist of Professional Services and does not provide coverage for punitive damages and disgorgement of fees, which do not constitute as Loss under the said Policy.

e)   Should Westport Policy No. WLA308011691503 not be deemed rescinded, a declaration that the following exclusions in Westport Policy No. WLA308011691503 preclude coverage for the Underlying Lawsuit: Exclusions B, H, I, J, N, and O.

f)  awarding counsel fees and costs; and

g)  for such other and further relief as the Court deems just and proper.

Dated: December 14, 2021        Respectfully submitted,

        By:   /s/ Jose I. Rojas
            Jose I. Rojas
            Florida Bar No. 331546
            Direct Tel.: (305) 206-3581
            Email: jrojas@rojaslawfirm.com
            Alexander F. Rojas
            Florida Bar No. 124232
            Email: arojas@rojaslawfirm.com
            ROJASLAW
            201 S. Biscayne Blvd., 28th Floor
            Miami, FL 33131
            Tel.: (305) 446-4000
            *Counsel for Plaintiff*